Daniel Srourian, Esq. (SBN 285678)
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr., Suite 200
Beverly Hills, CA 90210
Telephone: (213) 474-3800
Facsimile: (213) 471-4160
Email: daniel@slfla.com

**LAUKAITIS LAW LLC**
Kevin Laukaitis*
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: 215-559-6072
klaukaitis@laukaitislaw.com

*Attorneys for Plaintiff and the Putative Class*
*Application for admission *pro hac vice* forthcoming

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SUE COLBY, individually and on behalf of all others similarly situated,

Plaintiff,

v.

QUEST NUTRITION, LLC,

Defendant.

Case No. 2:26-cv-10907

**CLASS ACTION COMPLAINT**

**JURY DEMAND**

Plaintiff Sue Colby ("Plaintiff"), on behalf of herself and all others similarly situated, alleges the following class action complaint (the "Action") against Defendant Quest Nutrition, LLC ("Defendant" or "Quest"), for violations of state statutes and common law doctrines seeking actual

damages, statutory damages, restitution, pre- and post-judgment interest, and reasonable costs and attorneys' fees upon personal knowledge as to herself and her own actions, and upon information and belief, including the investigation of her counsel as follows:

**INTRODUCTION**

1. This is a class action on behalf of consumers who purchased protein bars, cookies, candy, and bake shop products (collectively, the "Products").[1]

2. Defendant markets to health-conscious consumers seeking nutritious, protein-rich, and low sugar alternatives. Defendant claims that they use "only quality ingredients" and that the Products are "big on protein, low on sugar and huge on flavor." Defendant presents itself as a cornerstone of the modern health-focused food movement, attracting consumers who prioritize wholesome, functional nutrition and seek products that support their overall well-being.

3. Contrary to Defendant's representations, the Products are not healthy and are not made with "only quality ingredients." They contain erythritol, a synthetic, industrially manufactured sugar alcohol that medical research has linked to markedly increased risks of heart attack, stroke, and other serious cardiovascular events.

4. Erythritol renders the Products anything but healthy. By promoting them as nutritious, made with "quality ingredients," offering "athlete-worthy nutrition," and promising to make "the foods you crave work for you, not against you," while concealing the cardiovascular

[1] The Products include, but are not limited to, the following: twenty-eight bars (pumpkin pie, strawberry shortcake, chocolate chip cookie dough, double chocolate chunk, s'mores, oatmeal chocolate chip, chocolate peanut butter, cookies & cream, white chocolate raspberry, lemon cake, blueberry muffin, chocolate brownie, mint chocolate chunk, dipped cookies & cream, birthday cake, dipped chocolate chip cookie dough, apple pie, mini cookies & cream, mini chocolate chip cookie dough, sundae funday overload, cookie commotion overload, chocolate explosion overload, birthday cake crispy hero, blueberry cobbler crispy hero, cookies & cream crispy hero, chocolate caramel pecan crispy hero, chocolate peanut butter crispy hero, and peanut butter & jelly crispy hero), six cookies (double chocolate, peanut butter, chocolate chip, snickerdoodle, peanut butter chocolate chip, and white chocolate macadamia), four frosted cookies (lemon cake, birthday cake, strawberry cake, chocolate cake), four bake shop products (chocolate frosted donuts, chocolate brownies, blueberry muffins, and chocolate chip muffins), and three candy products (peanutty caramel candy bar, peanut butter cups, and chocolate coated peanuts).

dangers associated with erythritol, Defendant misled consumers into purchasing products that endanger their health.

5. Through this false and deceptive marketing, advertising, and labeling scheme, Defendant has violated, and continues to violate, Business & Professions Code §§ 17200 *et seq*. and 17500 *et seq*., as well as the Consumers Legal Remedies Act, Civil Code §§ 1750 *et seq*.

6. For as long as consumable goods have been sold, "health-washing," which is the instigation of a sale of a consumer product by making it appear healthier than it is, has led consumers to buy products that either do not actually have any health benefits or are, in some cases, harmful. The instant case is a classic occurrence of health-washing. Here, Defendant uses false advertising and deceptive conduct which promises health-related benefits. To compound matters, the misrepresentations made on the Products are not only potentially harmful but command a price premium consistent with these misrepresentations that Plaintiff and Class Members (as defined below) would not have paid had they known that Defendant's representations are false and misleading. The Products also intentionally contain no warning whatsoever about potential risks and the tendency to cause health risks.

7. Plaintiff, individually and on behalf of the proposed Class, seeks damages, restitution, and injunctive relief, including public injunctive relief, to remedy the harm caused by Defendant's unlawful labeling practices.

## JURISDICTION AND VENUE

8. Jurisdiction is proper in this Court under 28 U.S.C. §1332 (diversity jurisdiction). Specifically, this Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one class member is a citizen of a state different from Defendant.

9. Supplemental jurisdiction to adjudicate issues pertaining to state law is proper in this Court under 28 U.S.C. §1367.

10. Defendant is headquartered and routinely conducts business in the State where this district is located, has sufficient minimum contacts in this State, and has intentionally availed itself of this jurisdiction by marketing and selling products, and by accepting and processing payments for those products within this State. Plaintiff is a citizen of California.

11. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events that gave rise to Plaintiff's claims occurred within this District, and Defendant does business in this Judicial District.

## THE PARTIES

**Plaintiff Sue Colby**

12. Plaintiff Sue Colby is a citizen of California residing in Clovis, California. Plaintiff Colby purchased Defendant's Quest Chocolate Chip Cookie Dough flavored protein bar for personal use at Walmart in September, 2026. Prior to making her purchase, Plaintiff Colby saw and relied on Defendant's representations that the Products contain "only quality ingredients" and that "Quest Nutrition is on a mission to make the foods you crave work for you not against you." These representations were part of the basis of her bargain, in that Plaintiff Colby would not have purchased the Products on the same terms had she known that the representations were untrue. Furthermore, in making her purchase, Plaintiff Colby paid a price premium due to Defendant's false and misleading health claims. Plaintiff Colby, however, did not receive the benefit of the bargain because the Products were not, in fact, healthy. Instead, they contained erythritol which has been linked to elevated risk of heart attack, stroke, and other adverse cardiovascular events. Had Plaintiff Colby known that Defendant's representations were false and misleading, she would not have purchased the Products or would have paid substantially less for them. Plaintiff Colby

purchased the Product for herself for personal use during the class period. The Products are sold at a price premium and are more expensive than other protein bars.

13. Plaintiff Colby remains interested in purchasing protein bars that are in fact, healthy for consumption. However, she cannot know for certain whether the false labeling and marketing of the Products have been or will be corrected, and the Products' composition may change over time. If Defendant continues to make the Representations, Plaintiff Colby will be unable to make informed purchasing decisions and is likely to be misled again unless Defendant is required to ensure that the Products' marketing is accurate. Plaintiff Colby is an average consumer who is not sophisticated in the chemistry, manufacturing, or formulation of food and beverage products.

**Defendant Quest Nutrition, LLC**

14. Defendant Quest Nutrition, LLC is a California corporation with its principal place of business in El Segundo, California. At all times during the class period, Defendant was the manufacturer, distributor, marketer, and seller of the Products. Defendant, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of California.

## FACTUAL BACKGROUND

### Defendant Presents its Products as Nutritious and Healthy for Consumers

15. Defendant aggressively promotes its products to health/nutrition-conscious consumers seeking high-protein, low-sugar, and low-carbohydrate options to support an active lifestyle. Its motto, "snack like a genius," and claims that it "turns your fave sips & snacks into hacks…big on protein & bigger on flavor"[2] reinforce this positioning. Defendant represents that its bars contain "quality protein," are "rich in fiber," "gluten free," and made with "quality

---

[2] *See* Defendant Website, https://www.questnutrition.com/collections/protein-bars-all/products/peanut-butter-jelly-crispy-hero-protein-bars; https://www.questnutrition.com/collections/protein-bars-all/products/birthday-cake-protein-bar (last accessed September 18, 2026).

ingredients." It also prominently advertises its mission to provide "delicious athlete-worthy nutrition."[3]




*Figure 1: "Snack like a Genius" claim*

16. The "athlete-worthy nutrition" claim appears within a broader panel that makes specific factual assertions about ingredient quality:




*Figure 2: "Athlete-worthy nutrition" Claim"*

[3] *See* Defendant Website, https://www.questnutrition.com/collections/protein-bars-all/products/lemon-cake-protein-bar (last accessed September 18, 2026).

17. Defendant further promises that "20g of grab & go protein" is ideal for commuting, desk snacking, or post-workout refueling, and describes its bars as "an easy-breezy cheat to support your protein goals."[4] Product labels also declare: "Quest Nutrition is on a mission to make the foods you crave work for you not against you."




*Figure 3: "Quest Nutrition is on a mission to make the foods you crave work for you not against you" claim.*

18. Defendant repeatedly tells consumers that its products let them "cheat on treats with bakery cheats," are "basically cheating," and are "big on protein, low on sugar and huge on flavor."[5] Its bake-shop line similarly emphasizes high protein and minimal sugar: "Deliciously soft muffins & brownies with 10g protein and <2g sugar."[6]

19. Defendant openly acknowledges its health-and-wellness branding: "Quest positions

---

[4] *See* Defendant Website, https://www.questnutrition.com/collections/protein-bars-all/products/strawberry-shortcake-protein-bar (last accessed September 18, 2026).
[5] *Id.*
[6] *See* Defendant Website, https://www.questnutrition.com/collections/bake-shop (last accessed September 18, 2026).

itself to be a health-minded, good-for-you brand that appeals to consumers who are concerned about eating nourishing and beneficial foods that will improve their health." It claims leadership in the "nutritious snacking movement" and highlights its "trusted brands" offering "better-for-you snacks and meal replacements" aligned with consumer demand for high-protein, low-carbohydrate, low-sugar foods.[7]

20. Defendant's parent company, Simply Good Foods, reinforces this positioning in its 2025 Form 10-K, describing Quest as a brand for consumers seeking "protein-rich foods and beverages that also limit sugars and simple carbohydrates."[8] The company emphasizes rising consumer preference for convenient, "better-for-you" snacks and asserts that Quest's portfolio, which includes protein bars, cookies, chips, shakes, and confections, is designed to meet these trends.

21. Defendant targets consumers who are serious about nutrition, concerned about health risks associated with sugar and carbohydrates, and seeking convenient, ready-to-eat products. Simply Good Foods notes that consumers are increasingly focused on protein intake, carbohydrate reduction, and convenient meal replacements, trends Defendant claims to be "well-aligned" with.

22. Defendant seeks to cement the perception that it is a pillar of balanced, protein-forward nutrition and a brand that helps consumers avoid unhealthy ingredients such as refined sugar. It touts its "leading position within retailers' nutrition and wellness aisles" and appeals to consumers "interested in an active lifestyle" and "seeking protein-rich, low-carb snacking options."

23. Consistent with this messaging, the Products are merchandised in retail environments that reinforce Defendant's health-and-wellness identity. In grocery stores, supercenters, and club

---

[7] *See* Fiscal 2025 Annual Report on Form 10-K, https://www.thesimplygoodfoodscompany.com/proxy (last accessed September 18, 2026)

[8] *Id.*

stores, they are placed in health, nutrition, and sports-nutrition aisles, alongside protein powders, shakes, and supplements, and apart from conventional candy and snack aisles.

24. The Products are also sold at dedicated vitamin and supplement retailers such as The Vitamin Shoppe and GNC, whose assortments consist entirely of health, fitness, and sports-nutrition products.

25. A reasonable consumer encountering the Products in these contexts, shelved with supplements and sports-nutrition items, not candy, understands them to be healthful nutrition products, exactly as Defendant intends.

26. Dessert-style flavor names such as "chocolate brownie," "birthday cake," "s'mores," and "frosted cookies" do not signal indulgence or negate Defendant's health claims. In the sports-nutrition market, dessert analogs are routinely used to communicate that consumers can enjoy dessert flavors while making a healthier choice.

27. Defendant's own marketing makes this explicit: its products let consumers "cheat on treats with bakery cheats," are "basically cheating," and make "the foods you crave work for you not against you." A Quest "Chocolate Brownie" is not a brownie; it is marketed, merchandised, and priced as a high-protein, low-sugar nutrition product that tastes like one.

28. Under federal labeling law, flavor names are "characterizing flavors," 21 C.F.R. § 101.22(i): they describe taste, not nutritional quality. Reasonable consumers understand that a bar tasting like cookie dough is still represented to be a high-protein, low-sugar product made with "quality ingredients." Flavor names are not nutritional disclaimers.

29. Paired with front-of-pack protein and sugar claims and Defendant's extensive health-and-quality messaging, dessert-style flavor names reinforce, not undermine, the perception that the Products are healthful alternatives to conventional desserts.

30. Simply Good Foods' corporate purpose statement underscores the brand's

health-centric identity: "We're raising the bar on what food can be…making better food…radically nutritious and defyingly delicious…Better nutrition made easy so you can live well."

**Defendant utilizes Erythritol for the Products – A Dangerous Ingredient**

31. Despite Defendant's marketing, many of its products contain erythritol, a synthetic sugar alcohol. Although trace amounts occur naturally in certain fruits and fermented foods, those levels are minuscule, hundredths of a gram per pound, making natural sourcing economically impossible.

32. The erythritol used in processed foods, including the Products, is instead industrially produced, typically by fermenting corn-derived glucose with specialized yeast strains. It is added to foods in gram-level quantities that far exceed the negligible amounts found in nature.

33. As a result, consumers ingest erythritol at levels that natural dietary sources could never generate. As alleged below, a single erythritol-sweetened serving can raise blood erythritol concentrations more than 1,000-fold. Medical evidence links erythritol to adverse cardiovascular events[9]: it increases platelet clotting and elevates the risk of heart attack and stroke. These findings come from leading medical institutions, including the National Institutes of Health and the Cleveland Clinic.[10]

34. Landmark research from Dr. Stanley Hazen and colleagues at the Cleveland Clinic's Lerner Research Institute, published February 27, 2023 in *Nature Medicine*, examined more than 4,000 subjects across U.S. and European cohorts. The study found that individuals with elevated blood erythritol levels were roughly twice as likely to experience a major adverse cardiovascular event, heart attack, stroke, or death, within three years compared to those with low levels. This

---

[9] *See* https://www.nih.gov/news-events/nih-research-matters/erythritol-cardiovascular-events; https://pubmed.ncbi.nlm.nih.gov/36849732/ (last accessed September 18, 2026)

[10] *See* https://www.nih.gov/news-events/nih-research-matters/erythritol-cardiovascular-events; https://pubmed.ncbi.nlm.nih.gov/36849732/; https://my.clevelandclinic.org/podcasts/health essentials/nutrition-essentials-are-you-risking-your-health-using-artificial-sweeteners. (last accessed September 18, 2026)

association persisted independent of traditional risk factors such as hypertension, diabetes, and smoking.[11] The study was funded in part by the National Heart, Lung, and Blood Institute and the Office of Dietary Supplements of the National Institutes of Health, and the NIH itself published a summary of the findings, underscoring their significance.

35. The mechanistic data are even more alarming. In laboratory studies, erythritol made human platelets markedly easier to activate, increasing their tendency to form dangerous clots. Animal studies confirmed that elevated erythritol accelerated clot formation and shortened the time to arterial blockage. Pharmacokinetic testing showed that a single erythritol-sweetened beverage caused blood erythritol levels to spike more than 1,000-fold within minutes, remaining above the threshold known to impair platelet function for at least 48 hours. Equivalent amounts of glucose produced none of these effects.[12] Because the human body cannot metabolize erythritol, it enters the bloodstream directly and circulates until excreted. A consumer who eats a Quest bar in the morning may therefore experience heightened platelet reactivity well into the following day, creating an extended window of increased stroke and heart-attack risk with each consumption occasion.

36. The Cleveland Clinic team reinforced these findings in a 2024 intervention study published in *Arteriosclerosis, Thrombosis and Vascular Biology*. In a direct comparison between erythritol and glucose in healthy volunteers, erythritol ingestion, unlike glucose, enhanced platelet responsiveness in every subject, across every agonist and dose tested. The authors concluded that the collective evidence, "combined with recent large-scale clinical observational studies and mechanistic cell-based and animal model studies," warranted discussion of whether erythritol

---

[11] *Marco Witkowski*, The Artificial Sweetener Erythritol and Cardiovascular Event Risk, 29 Nature Medicine 710 (2023), https://pubmed.ncbi.nlm.nih.gov/36849732/; see also National Institutes of Health, Erythritol and Cardiovascular Events, https://www.nih.gov/news-events/nih research-matters/erythritol-cardiovascular-events

[12] Witkowski; PMC full text at https://pmc.ncbi.nlm.nih.gov/articles/PMC10334259/

should be banned.[13] Importantly, both the 2023 and 2024 studies examined healthy volunteers with no pre-existing cardiovascular disease and still found the same pro-thrombotic effects. As Dr. Hazen has warned, "We need to make sure the foods we eat aren't hidden contributors," specifically cautioning clinicians advising patients who consume protein bars and "sugar-free" products, the very category of products Quest markets as health foods.

37. Independent research corroborates these findings. In June 2025, scientists at the University of Colorado Boulder's Integrative Vascular Biology Laboratory published a peer-reviewed study in the *Journal of Applied Physiology* examining human cerebral microvascular endothelial cells exposed to erythritol at levels comparable to those produced by a typical serving of an erythritol-sweetened product.[14]

38. The researchers found that erythritol increased oxidative stress, impaired nitric-oxide production (which dilates blood vessels), increased endothelin-1 (which constricts blood vessels), and reduced release of t-PA, the body's natural clot-dissolving protein. Each mechanism independently impairs cerebral blood-vessel function; together, they compound the stroke risk associated with erythritol consumption.

39. At minimum, erythritol's safety is the subject of serious, credible, and unresolved scientific controversy. NIH-funded, peer-reviewed research published in leading medical journals has linked erythritol to a doubling of major adverse cardiovascular events, and researchers themselves have called for discussion of whether the ingredient should be banned.

40. This risk, and the surrounding scientific controversy, is material to reasonable

---

[13] Marco Witkowski., Ingestion of the Non-Nutritive Sweetener Erythritol, but Not Glucose, Enhances Platelet Reactivity and Thrombosis Potential in Healthy Volunteers—Brief Report, 44 Arteriosclerosis, Thrombosis and Vascular Biology 2136 (2024), https://pubmed.ncbi.nlm.nih.gov/39114916/; Cleveland Clinic, Cleveland Clinic Study Adds to Increasing Evidence That Sugar Substitute Erythritol Raises Cardiovascular Risk (Aug. 8, 2024), https://newsroom.clevelandclinic.org/2024/08/08/cleveland-clinic-study-adds-to-increasing evidence-that-sugar-substitute-erythritol-raises-cardiovascular-risk

[14] Berry et al., The Non-Nutritive Sweetener Erythritol Adversely Affects Brain Microvascular Endothelial Cell Function, 138 J. Applied Physiology 1571 (June 2025), https://doi.org/10.1152/japplphysiol.00276.2025.

consumers. A consumer seeking high-protein, low-sugar nutrition products based on representations that they contain "only quality ingredients," provide "athlete-worthy nutrition," and "work for you not against you" would consider it important that a core ingredient has been credibly linked to elevated cardiovascular risk.

41. Defendant's representations are therefore false and misleading for an additional, independent reason: they convey that the Products' ingredients are uncontroversially high-quality, healthful, and safe, when in fact a key ingredient carries a serious, undisclosed risk profile that Defendant never reveals to consumers.

**Defendant's Conduct Violates California's Food Labeling Laws**

42. Defendant's marketing, advertising, distribution, and sale of the Products violate the misbranding provisions of California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. (the "Sherman Law"), which adopts federal food-labeling regulations as California regulations. Cal. Health & Safety Code § 110100(a); see also id. § 110670.

43. Defendant's marketing, advertising, distribution, and sale of the Products violate the Sherman Law's misbranding provisions, including:

(a) Section 110660 (a food is misbranded if its labeling is false or misleading in any particular);

(b) Section 110670 (a food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims set forth in 21 U.S.C. § 343(r));

(c) Section 110760 (making it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded);

(d) Section 110765 (making it unlawful for any person to misbrand any food); and

(e) Section 110770 (making it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery of any such food).

44. Defendant's marketing, advertising, distribution, and sale of the Products also violate the Sherman Law's false-advertising provisions, including:

(a) Section 109885, which defines "advertisement" to include representations on products and their packages, and Section 110390, which prohibits dissemination of food advertisements that are false or misleading in any particular;

(b) Section 110395 (making it unlawful to manufacture, sell, deliver, hold, or offer to sell any falsely or misleadingly advertised food); and

(c) Sections 110398 and 110400 (making it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely or misleadingly advertised).

**<u>Reasonable Consumers Would Be Misled By Defendant's Deception.</u>**

45. When a consumer who is seeking healthy, high-protein nutrition products sees that the product contains labels such as "only quality ingredients" and "athlete-worthy nutrition," they would be misled into believing that such Products are safe for consumption and beneficial to their health.

46. Consumers are not required to conduct independent scientific testing or research into the chemical classification of listed ingredients to verify express label claims. Reasonable consumers do not possess specialized knowledge of carbohydrate chemistry. Defendant is responsible for ensuring that its express labeling and marketing claims are truthful and not misleading.

**<u>Defendant Knew the Representations Were False</u>**

47. Defendant knew, or should have known, that the representations were false, misleading, deceptive, and unlawful when it marketed, advertised, labeled, distributed, and sold the Products. Specifically, Defendant knew that: (a) the Products contain erythritol; (b) erythritol is linked to higher risk levels of heart attack, stroke, and other cardiovascular events; (c) its labels

represented that the Products were healthy for consumers; (d) reasonable consumers would rely on those labels when purchasing; (e) consumers would not receive the represented benefit of the bargain; and (f) the representations enabled Defendant to charge a premium for these Products.

48. Defendant, as the marketer and distributor of the Products, controlled, or participated in, making the representations on the Products' labels and advertisements. Defendant could have stopped using the representations or ensured that they were true. Despite its knowledge that consumers reasonably rely on the representations, Defendant chose to continue using them, thereby causing consumers to buy or overpay for the Products.

**Plaintiff Lacks an Adequate Remedy at Law**

49. Plaintiff lacks an adequate remedy at law for the future harm described above. Damages cannot remedy Plaintiff's inability to rely on Defendant's representations when deciding whether to purchase the Products in the future. Only injunctive relief requiring Defendant to cease or correct the misleading representations can address that prospective harm.

50. Equitable relief is also necessary because legal remedies may prove inadequate to provide complete relief, including restitution measured by the difference between the prices Plaintiff and Class Members paid and the value of the Products as received, and disgorgement of revenues Defendant unfairly obtained, which are equitable remedies not necessarily coextensive with damages.

51. Equitable relief is additionally appropriate because the statutes of limitations for the asserted causes of action vary. The UCL and FAL carry four-year limitations periods, which may reach purchases not fully remediable under other causes of action.

52. The scope of actionable misconduct under the FAL and UCL is also broader than under the other causes of action asserted herein. The FAL and UCL prohibit Defendant's fraudulent marketing scheme. Plaintiff's warranty and common-law claims are more limited, focusing on

duties arising from Defendant's representations at the point of purchase. The UCL may also borrow statutory prohibitions that do not themselves create a private cause of action.

## CLASS ACTION ALLEGATIONS

53. Plaintiff brings this action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of herself and the following Classes:

> **Nationwide Class:** All persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Products for their personal use.
>
> **-and-**
>
> **California Subclass:** All persons in California who, during the maximum period of time permitted by law, purchased Defendant's Products for their personal use (hereinafter "CA Subclass" and together with Nationwide Class, as the "Members of the Class," "Class Members" or "Classes").

54. Excluded from the Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as its immediate family members.

55. Plaintiff reserves the right to amend the above definitions or to propose subclasses in subsequent pleadings and motions for class certification.

56. This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation, and membership in the proposed classes is easily ascertainable.

57. <u>Numerosity</u>: A class action is the only available method for the fair and efficient

adjudication of this controversy, as the members of the Class are so numerous that joinder of all members is impractical, if not impossible. Members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

58. Commonality: Plaintiff and the Class Members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

a. Whether reasonable consumers would understand Defendant's representations and warranties concerning the Products to be untrue and misleading;

b. Whether Defendant's representations and warranties were material;

c. Whether the Products are misbranded under federal law and, with respect to the California Subclass, California law;

d. Whether Defendant was unjustly enriched as a result of the unlawful conduct alleged in this Complaint;

e. Whether Plaintiff and the members of the Classes have suffered damages as a result of Defendant's actions and the amount of those damages;

f. Whether Plaintiff and the members of the Classes are entitled to statutory damages; and

g. Whether Plaintiff and the members of the Classes are entitled to attorneys' fees and costs.

59. Typicality: Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class sustained damages arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein.

60. Adequacy of Representation: Plaintiff in this class action is an adequate representative of the Class in that the Plaintiff has the same interest in the litigation of this case as the Class Members, is committed to the vigorous prosecution of this case and has retained competent counsel who are experienced in conducting litigation of this nature.

61. Plaintiff is not subject to any individual defenses unique from those conceivably applicable to other Class Members or the class in its entirety. Plaintiff anticipates no management difficulties in this litigation.

62. Superiority of Class Action: Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member make or may make it impractical for members of the Class to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought, by each individual member of the Class, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants.

63. The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of the Class Members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests adequately.

64. This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class in its entirety.

65. Defendant's policies and practices challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies and practices hinges on Defendant's conduct with respect to the Class in its entirety, not on facts or law applicable only to Plaintiff.

66. Unless a Class-wide injunction is issued, Defendant may continue to act unlawfully

as set forth in this Complaint.

67. Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Federal Rule of Civil Procedure 23.

## CLAIMS FOR RELIEF

### COUNT ONE
**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750 et seq.**
**(On Behalf of Plaintiff and the California Subclass)**

68. Plaintiff Colby incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

69. Plaintiff Colby brings this claim on behalf of herself and the CA Subclass against Defendant.

70. Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have."

71. Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

72. Civil Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

73. Defendant profited from sales of the falsely and deceptively advertised Products by representing that the Products are healthy even though they contain erythritol.

74. Defendant's wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

75. On September 23, 2026, counsel for Plaintiff Colby mailed a pre-suit notice letter pursuant to Cal. Civ. Code § 1782 via certified mail, return receipt requested, to Defendant. The letter provided notice of the alleged CLRA violations and other consumer protection statutes on behalf of the class members and demanded that the recipients correct the unlawful, unfair, false, or deceptive practices alleged herein. A copy of the letter is attached hereto as **Exhibit A**.

76. If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within thirty (30) days of the date of written notice, pursuant to section 1782 of the CLRA, Plaintiff intends to amend the complaint to seek actual, punitive, and statutory damages.

77. Plaintiff seeks all available relief under the CLRA for all violations complained of herein.

78. Accordingly, Plaintiff and the other Class Members seek restitution and an order enjoining the acts and practices described above.

79. Pursuant to § 1780(d) of the CLRA, attached hereto as **Exhibit B** is the affidavit showing that this action has been commenced in the proper forum.

## COUNT TWO
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200 et seq.**
**(On Behalf of Plaintiff and the California Subclass)**

80. Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

81. Plaintiff Colby brings this claim individually and on behalf of the CA Subclass against Defendant.

82. Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200–17210, by engaging in unfair, fraudulent, and unlawful business practices.

83. Plaintiff Colby has standing to pursue this claim because she suffered an injury in

fact and lost money or property as a result of Defendant's conduct. Plaintiff Colby purchased the Product for personal use, relied on Defendant's representations and spent money she otherwise would not have spent had she known that erythritol was a dangerous ingredient.

84. The UCL defines unfair competition to "mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Cal. Bus. & Prof. Code § 17200. A business act or practice is "unlawful" if it violates any established state or federal law. A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. Cal. Bus. & Prof. Code § 17204. Such a person may bring such an action on behalf of themselves or others similarly situated who are affected by the unlawful or unfair business practice or act.

85. Defendant's acts, as described above, constitute unlawful, unfair, and fraudulent business practices pursuant to California Business & Professions Code § 17200 et seq.

86. Defendant violated the UCL's proscription against engaging in Unlawful Business Practices through its violations of the FAL, Cal. Bus. & Prof. Code § 17500 et seq.; the CLRA, Cal. Civ. Code § 1770 et seq.; the Sherman Law, including, without limitation, Cal. Health & Safety Code §§ 110100, 110390, 110395, 110398, 110400, 110660, 110670, 110760, 110765, and 110770; and the federal food labeling requirements adopted by the Sherman Law, including 21 U.S.C. § 343(a)(1) and (r)(1)(A) and 21 C.F.R. §§ 101.13 and 101.60(c)(1).

87. Defendant has also violated the UCL's proscription against engaging in Unfair Business Practices. Defendant's acts, omissions, misrepresentations, practices, and nondisclosures as alleged herein also constitute unfair business acts and practices within the meaning of Business

& Professions Code § 17200 et seq. Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous. The gravity of Defendant's conduct outweighs any alleged benefits attributable to it. Furthermore, Defendant's false and misleading representations are detrimental to competitors offering protein bars that either do not make similar claims or do not contradict those claims by including erythritol in their products. Defendant's misrepresentations and omissions therefore harm consumers and the market as a whole.

88. Plaintiff Colby and the CA Subclass members suffered substantial injury by virtue of buying the Products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and omissions about the risks of having ingredients such as erythritol in the Products. The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives in the marketplace. Such conduct is immoral, unethical, or unscrupulous; it offends established public policy and is substantially injurious to Plaintiff Colby and the CA Subclass members.

89. Plaintiff Colby and the CA Subclass members could not have reasonably avoided their injury or known that the Products' prominent labeling and marketing were inaccurate. Furthermore, consumers lack the specialized knowledge to determine whether an ingredient such as erythritol is dangerous for an individual's health. As such, they could not have reasonably avoided the injury they suffered.

90. Pursuant to California Business and Professions Code § 17203, Plaintiff Colby and the CA Subclass members seek restitution, attorneys' fees, and all other relief that the Court deems proper.

**COUNT THREE**

**Violation of California's False Advertising Law ("FAL")**

**Cal. Bus. & Prof. Code § 17500**
**(On Behalf of Plaintiff and the California Subclass)**

91. Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

92. Plaintiff Colby brings this claim on behalf of herself and the CA Subclass against Defendant.

93. Defendant's acts and practices, as described herein, have deceived or are likely to deceive members of the CA Subclass and the public. Defendant represents that the Products are healthy even though they contain erythritol.

94. Defendant has disseminated uniform advertising regarding the Products throughout California and the United States. The advertising was unfair, deceptive, untrue, or misleading within the meaning of Cal. Bus. & Prof. Code § 17500 and was intended and likely to deceive consumers.

95. In making and disseminating these statements, Defendant knew, or should have known, that its advertising was untrue or misleading. Plaintiff Colby and the CA Subclass based their purchasing decisions on Defendant's materially false representations and were injured in fact and lost money or property as a result.

96. Defendant's misrepresentations concerning the material facts described above constitute false and misleading advertising and therefore violate Cal. Bus. & Prof. Code § 17500 et seq.

97. Plaintiff Colby and the CA Subclass members seek restitution, attorneys' fees, and all other relief that the Court deems proper.

## COUNT FOUR
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class, or alternatively, the California Subclass)**

98. Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

99. Plaintiff brings this claim individually and on behalf of the Nationwide Class, or alternatively the CA Subclass, against Defendant.

100. To the extent required, Plaintiff asserts this cause of action in the alternative to her legal claims, as permitted by Federal Rule of Civil Procedure 8.

101. Plaintiff and the Nationwide Class, or alternatively the CA Subclass, conferred a benefit on Defendant in the form of revenues Defendant derived from their purchases of the Products.

102. Defendant knew of the benefit Plaintiff and the Class Members conferred on it.

103. Defendant has been unjustly enriched by retaining revenues from Plaintiff's and Class Members' purchases. That retention is unjust because Defendant misrepresented that the Products were healthy despite containing erythritol, causing purchases that otherwise would not have occurred or would have occurred only at lower prices.

104. Defendant accepted and retained the benefit of revenues derived from sales of the Products to Plaintiff and Class Members.

105. Defendant has thereby profited under circumstances that make it unjust for Defendant to retain the benefit.

106. Plaintiff and the Nationwide Class, or alternatively the CA Subclass, are therefore entitled to restitution in the form of revenues derived from Defendant's sale of the Products.

107. As a direct and proximate result of Defendant's actions, Plaintiff and the Class Members have suffered damages in an amount to be proven at trial.

108. Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's conduct.

109. Plaintiff and the Class Members lack an adequate remedy at law with respect to this claim and seek equitable relief as allowed by law.

110. Legal remedies available to Plaintiff and the Nationwide Class, or alternatively the CA Subclass, are inadequate because they are not as prompt, certain, or efficient as equitable relief. Damages are not as certain as restitution because the standard that governs restitution is different from the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff has failed to adduce sufficient evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not as certain as restitution because such claims require different elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

111. Equitable relief is appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from her respective purchases of the Products are determined to be less than the price premiums they paid. Without compensation for the full price premiums, Plaintiff and the Class Members would be left without the parity in purchasing power to which they are entitled.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, on behalf of herself and each member of the proposed Class, respectfully request that the Court enter judgment in their favor and for the following specific relief against Defendant as follows:

1. That the Court declare, adjudge, and decree that this action is a proper class action and certify the proposed class under Federal Rule of Civil Procedure 23, including the appointment of Plaintiff's counsel as Class Counsel;

2. For an order declaring that Defendant's conduct violates each of the statutes referenced herein;

3. For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

4. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury, consistent with applicable law and only under causes of action that permit such relief;

5. For prejudgment interest on all amounts awarded;

6. For an order of restitution and all other forms of equitable monetary relief;

7. For injunctive relief as pleaded or as the Court may deem proper, including an order requiring Defendant to cease labeling, marketing, and selling the Products with the Representations and to make affirmative disclosures sufficient to dispel the public misperception created by Defendant's conduct; and

8. For an order awarding Plaintiff's and the Classes' reasonable attorneys' fees, expenses, and costs of suit.

## JURY DEMAND

Plaintiff, individually and on behalf of the Class, hereby demands a trial by jury for all issues triable by jury.

Dated: September 23, 2026 Respectfully submitted,

By: */s/ Daniel Srourian*

Daniel Srourian, Esq. (SBN 285678)
SROURIAN LAW FIRM, P.C.
468 N. Camden Dr., Suite 200
Beverly Hills, CA 90210
Telephone: (213) 474-3800
Facsimile: (213) 471-4160
Email: daniel@slfla.com

**LAUKAITIS LAW LLC**
Kevin Laukaitis*
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: 215-559-6072
klaukaitis@laukaitislaw.com

**Pro Hac Vice admission forthcoming*

Attorneys for Plaintiff and the Class

# EXHIBIT A

LaukaitisLaw
www.laukaitislaw.com
klaukaitis@laukaitislaw.com

September 23, 2026

***VIA USPS-CERTIFIED MAIL***
***AND REGULAR MAIL***

Quest Nutrition LLC
c/o Registered Agent, CSC - Lawyers Incorporating Service
777 Aviation Blvd., Suite 100
El Segundo, CA 90245

RE: *Notice of Claim and Violations of the Consumer Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, et seq. Concerning the Labeling and marketing of Quest Nutrition protein bars, cookies, candy, and bake shop products, Distributed and/or Sold by Quest Nutrition LLC*

Dear Registered Agent of Quest Nutrition LLC:

My firm represents Sue Colby ("Client"), a California citizen and resident who purchased one or more units of Quest Nutrition protein bars, cookies, candy, and bake shop products that were labeled and advertised as "big on protein, low on sugar" and containing "only quality ingredients" (the "Products"). The Products were designed, manufactured, marketed, distributed, and/or sold by Quest Nutrition LLC (referred to herein as "Quest"). Specifically, Sue Colby resides in Clovis, California, and she purchased the Quest Chocolate Chip Cookie Dough flavored protein bar for personal use at Walmart in September, 2026.

The purpose of this letter is to provide Quest with notice pursuant to California Civil Code § 1782 that Sue Colby demands that Quest redress the violations of the Consumer Legal Remedies Act ("CLRA"), California Civil Code §§1750, et seq., as described in detail below within thirty (30) days of receipt of this letter. If such redress is not made within thirty (30) days of receipt of this letter, our Client will file a class action complaint against Quest, on behalf of Sue Colby for violations of the CLRA and include causes of action for breach of warranties on behalf of herself and a Class of consumers who purchased the Products seeking monetary damages and equitable relief.

Specifically, Quest distributed and/or sold the Products in stores throughout the United States, including California. In various marketing materials, including but not limited to the Products' front labeling and website, Quest misrepresented through acts and omissions in the design, sale, marketing, and promotion of the Products, to our Client and all consumers who purchased the Products that the Products were described as being a product that contained "only quality ingredients". The labeling of the Products further establishes the quality of the product for

LaukaitisLaw
www.laukaitislaw.com
klaukaitis@laukaitislaw.com

health induced consumers, prominently advertising the words "Athlete-worthy nutrition" on the front label of the Products.

These representations are false and misleading because the Products are not healthy and are not made with "only quality ingredients." They contain erythritol, a synthetic, industrially manufactured sugar alcohol that medical research has linked to markedly increased risks of heart attack, stroke, and other serious cardiovascular events. The Client purchased the Products based on the Products' front-label representations, and she relied on the Products' labeling claims before purchasing the Products. Therefore, the Client—like the Class—was deprived of the benefit of the bargain.

Quest's labeling and marketing of the Products are false, misleading, and deceptive to all reasonable consumers, including the Client. Had the Client and all reasonable consumers known Quest's Products were mislabeled, she would not have purchased them or would have paid less.

You are hereby put on notice that Quest's conduct described herein violates various consumer protection statutes, including: Alabama Consumer Protection Act, Ala. Code §§ 8-19-1, et seq.; Alaska Unfair Trade Practices and Consumer Protection Act, Arizona Consumer Fraud Act, Ariz. Rev. Stat. §§ 44-1521, et seq.; Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-101, et seq.; Cal. Bus. & Prof. Code §§ 17200 through 17594; Cal. Civ. Code §§ 1750 through 1785; Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1- 101, et seq.; Connecticut Trade Practices Act, Conn. Gen. Stat. §§ 42-110g, et seq.; Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, et seq.; Georgia Uniform Deceptive Trade Practices Act, Ga. Code Ann. §§ 10-1-390, et seq.; Idaho Consumer Protection Act, Idaho Code §§ 48-601, et seq.; Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. §§ 505, et seq.; Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-1, et seq.; Iowa's Private Right of Action for Consumer Frauds Act, Iowa Code §§ 714H, et seq.; Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50-623, et seq.; Kentucky Consumer Protection Act, Ky. Rev. Stat. §§ 367.110, et seq.; Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, et seq.; Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-301, et seq.; Deceptive Acts or Practices Prohibited By Massachusetts Law, Mass. Gen. Laws ch. 93a, § 1, et seq.; Michigan Consumer Protection Act, Mich. Comp. Laws Ann. §§ 445.903, et seq.; Minnesota Consumer Fraud Act, Minn. Stat. §§ 325F.68, et seq. and Minn. Stat. §§ 8.31, et seq.; Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43, et seq.; Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, et seq.; Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §§ 87-301, et seq.; Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0903, et seq.; New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq., New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-2, et seq.; N.Y. Gen. Bus. Law §§ 349-350; North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, et seq.; N.D. Cent. Code §§ 51-15:01-11, et seq.; Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. §§ 1345.01, et seq.; Oklahoma Consumer Protection Act, Okla. Stat. tit. 15, §§ 751, et seq.; Oregon Unlawful Trade Practices Law, Or. Rev. Stat. §§ 646.605 through 646.656; Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. §§ 201-2 and 201-3, et seq.; Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws §§ 6-13.1, et seq.; South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10,

LaukaitisLaw
www.laukaitislaw.com
klaukaitis@laukaitislaw.com

et seq.; Tennessee Consumer Protection Act of 1977, Tenn. Code Ann. § 47-18-101, et seq.; Texas Deceptive Trade Practices—Consumer Protection Act, Tex. Bus. & Com. Code Ann. §§ 17.41, et seq.; Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-1, et seq.; Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196, et seq.; Washington Consumer Protection Act, Wash. Rev. Code Ann. §§ 19.86.020, et seq.; West Virginia Consumer Credit and Protection Act, W. Va. Code §§ 46A-6-101, et seq.; and the Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, et seq.

In addition, Quest's material misrepresentations, active concealment, and failure to disclose the true nature of the Products violate the express and implied warranty statutes of all fifty (50) states.

Quest has also violated, and continues to violate, the CLRA in at least the following respects:

a.) in violation of Section 1770(a)(4), Quest has used deceptive representations with respect to the Products;

b.) in violation of Section 1770(a)(5), Quest has represented that the Products have characteristics and benefits they do not have;

c.) in violation of Section 1770(a)(7), Quest has represented that the Products are of a particular standard when they are not; and

d.) in violation of Section 1770(a)(9), Quest has advertised the Products with the intent not to sell them as advertised.

Section 1782 of the California Civil Code provides that the party receiving notice under this section is required to "correct, repair, replace, or otherwise rectify" the goods alleged to be in violation within thirty (30) days after receipt of this letter, and must ensure that appropriate notice by Quest of this remedial action is made to all consumers who purchased the Products. Accordingly, we demand that Quest cease and desist from engaging in the foregoing violations of the CLRA immediately. We also request that Quest reimburse both Client and all mislabeled product purchasers. On behalf of Sue Colby, we also request that Quest provides for all costs, reasonable attorney fees, and claims administration costs pursuant to California Civil Code sections 1750, et seq.

If Quest fails to correct these violations within thirty (30) days, the Client has the right to file their class action suit for monetary damages.

However, if you would like to discuss resolving these violations before litigating this matter, I invite you to contact me soon. My phone number is 215-559-6072 and my email address is klaukaitis@laukaitislaw.com

I look forward to hearing from you.

LaukaitisLaw
www.laukaitislaw.com
klaukaitis@laukaitislaw.com

Very truly yours,

*<u>/s/ Kevin Laukaitis</u>*
Kevin Laukaitis

CC: Daniel Srourian, Esq.

954 Avenida Ponce De León, Suite 205, #10518, San Juan, Puerto Rico 00907

# EXHIBIT B

Daniel Srourian, Esq. (SBN 285678)
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr., Suite 200
Beverly Hills, CA 90210
Telephone: (213) 474-3800
Facsimile: (213) 471-4160
Email: daniel@slfla.com

**LAUKAITIS LAW LLC**
Kevin Laukaitis*
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: (215) 559-6072
klaukaitis@laukaitislaw.com

*Attorneys for Plaintiff and the Putative Class*
*Application for admission *pro hac vice* forthcoming

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SUE COLBY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>QUEST NUTRITION, LLC,<br><br>Defendant. | **AFFIDAVIT OF DANIEL SROURIAN** |

I, Daniel Srourian, declare as follows:

1. I am an attorney duly licensed to practice before all courts of the State of California. I am the founder of Srourian Law Firm, P.C. and counsel of record for plaintiff in the above-entitled action.

2. Defendant Quest Nutrition LLC has done and is doing business in this Judicial District. Furthermore, Plaintiff Sue Colby resides in Clovis, California, Fresno County.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on September 23, 2026, in Beverly Hills, California.

By: /s/ Daniel Srourian

Daniel Srourian, Esq. (SBN 285678)
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr., Suite 200
Beverly Hills, CA 90210
Telephone: (213) 474-3800
Facsimile: (213) 471-4160
Email: daniel@slfla.com

**LAUKAITIS LAW LLC**
Kevin Laukaitis (*pro hac vice forthcoming*)
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: (215) 559-6072
klaukaitis@laukaitislaw.com

*Attorneys for Plaintiff and the Putative Class*